IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LISA SPRINGER and　　　　　　　　　　　　　　　　　　　　　　　　　　　　　PLAINTIFFS
CRYSTAL N. DANIELS

v.　　　　　　　　　　　　　　　　No. 4:10CV00252 JLH

WELSPUN PIPES, INC.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　DEFENDANT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Lisa Springer and Crystal N. Daniels bring this action against their former employer Welspun Pipes, Inc., for sex discrimination in violation of Title VII, 42 U.S.C. § 2000 *et seq*. The Court held a three-day bench trial in which all of the evidence was received with the exception of the testimony of one witness, Charles Lamb. The record remained open by agreement of the parties to allow Lamb's testimony to be taken, which occurred on March 10, 2011. The case is now ripe for a decision.

**I.**

Welspun, an India-based company that manufactures steel pipes for natural gas and oil, owns and operates a facility in Little Rock, Arkansas. In 2008, Welspun hired Lisa Springer and Crystal Daniels to work in the Spiral Mill Department. Springer was hired as a machine operator, and Daniels was hired as a pipe cleaner. As new employees, Springer and Daniels received a Welspun Employee Handbook. Conducted listed in the handbook that could result in discipline up to and including termination included theft and destruction of company property. Welspun's overtime policy also stated that employees "must receive [their] Supervisor's advance approval before [they] perform overtime work," and "overtime worked without prior authorization from the supervisor may

result in disciplinary action, up to and including possible termination of employment." (Def.'s Ex. 23.)

In December 2008, Lisa Springer began working as an administrative assistant for Charlie Lamb, the plant manager over the Spiral Mill Department. Her job duties included answering the telephones, meeting and greeting new staff, entering Kronos time and attendance, entering employee work schedules in the Kronos system, and reporting to all supervisors any anomalies in the employee time records. In October of 2009, Crystal Daniels began reporting to Charlie Lamb as a safety coordinator. She was charged with making sure that employees were adhering to all of the safety procedures and wearing proper safety gear in the plant.

Initially, Welspun's Arkansas plant operated Monday through Friday with skeleton crews of maintenance workers working on Sundays. Welspun then went to two, twelve-hour shifts: 7 a.m. to 7 p.m. and 7 p.m. to 7 a.m. Although Lamb was very flexible with Springer and Daniels and often granted them permission to come in at other-than-scheduled times to work, he testified that both Springer and Daniels did have scheduled work hours: Springer was scheduled to work from 9 a.m. to 6 p.m. Monday through Friday and sometimes on Saturday or Sunday. Daniels generally was scheduled to work one of the twelve-hour shifts.

On December 9, 2009, Daniels sent an email to various management officials of Welspun, including Charlie Lamb, indicating that a padlock had been placed on a door that leads from the Spiral Mill Department into the Quality Control Lab. Kumar "Chary" Pidicheti, who works in the Quality Control Lab, placed the padlock on the door because he wanted to prevent people from using the Quality Control Lab as a shortcut to the Spiral Mill Department. The padlock was on the Quality Control Lab side of the door so that employees in the lab could lock others out. Martin Cain, the

head of safety for Welspun, confirmed that it is a violation of OSHA requirements to have a padlock on the door. Eventually, the padlock was removed from the door and the door lock was reversed so that the employees in the Quality Control Lab could lock the door from the inside to prevent others from entering the lab.

Charlie Lamb was in Chicago, Illinois, from on or about December 16, 2009, until on or about January 4, 2010. Springer and Daniels came to work on Saturday, December 19, 2009. Daniels' computer had crashed earlier in the week, and Springer planned to email a number of safety certifications to Daniels' new computer so that Daniels could then print them off, cut them out, and laminate them. However, Spring and Daniels did not accomplish these tasks on Saturday, and they decided to come in on Sunday to finish their work. Neither Springer nor Daniels was scheduled to work on Sunday, and Lamb testified that he did not give them permission to work that Sunday. Springer came into work on Sunday morning; Daniels came in Sunday afternoon. On Sunday afternoon, Daniels found Phillip Holloway, a maintenance employee, and asked him to remove the lock that had been placed on the Quality Control Lab door. Holloway hesitated at first, but Daniels told him that she would take responsibility for removing the lock. Holloway attempted to use a crowbar to break the lock, which was on the inside of the door, from the outside. Chary Pidicheti, who was working in the lab that day, then opened the door, and a confrontation ensued.

On Monday, December 21, 2009, Richard Janicki, Vice President of Operations for Welspun, met with Daniels and Springer to discuss the damage to the Quality Control Lab door and to find out whether they were working without authorization on Sunday, December 20, 2009. Both Daniels and Springer drafted written statements regarding the incident, and both alleged that Lamb had given them permission to work that Sunday. Janicki suspended Daniels indefinitely, pending further

investigation, for causing damage to the Quality Control Lab door and for stealing company time by working without authorization on Sunday, December 20, 2009. Janicki suspended Springer for one day for stealing company time; he suspended Holloway for one day for damaging the door.

Springer and Daniels returned to work on or about January 4, 2010, after the holidays. On January 6, 2010, Charlie Lamb returned to work to find that Springer and Daniels had worked without authorization on Sunday, December 20, 2009. He asked them to sign a written warning for working on Sunday without authorization; they refused. After Lamb gave the plaintiffs their written warnings, he spoke with Janicki, who told him that if Springer and Daniels were working without authorization, then they should be discharged in order to be consistent with the treatment of other employees. Springer and Daniels were terminated on January 7, 2010. Welspun's Little Rock plant has terminated at least four male employees for stealing time.

**II.**

Both Springer and Daniels allege that they were subject to disparate treatment because of their gender. In analyzing an employment discrimination claim based on gender, the Court uses the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). First, each plaintiff must establish a prima facie case of sex discrimination. *Wells v. SCI Management, L.P.*, 469 F.3d 697, 700 (8th Cir. 2006). When a prima facie case is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Carraher v. Target Corp.*, 503 F.3d 714, 717 (8th Cir. 2007) (citing *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007)). If the defendant is able to articulate a legitimate, nondiscriminatory reason, then the plaintiffs must show that the proffered reason is a pretext for intentional discrimination. *Id.*

A plaintiff generally establishes a prima facie case of sex discrimination by demonstrating that (1) she is a member of a protected class; (2) she was qualified to perform her job or was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) there are facts giving rise to an inference of unlawful gender discrimination. *Wells*, 469 F.3d at 700. The Supreme Court has recognized that the prima facie case necessarily varies based on the factual circumstances. *McDonnell Douglas Corp.*, 411 U.S. at 802 n.13, 93 S. Ct. at 1824; *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998). The necessary level of proof is flexible and varies with the specific facts of each case. *Warner-Jenkinson Co.*, 152 F.3d at 1022 (quoting *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990-91 (8th Cir. 1998)).

Neither Springer nor Daniels has established a prima facie case of gender discrimination. Although they were female employees who were meeting their employer's legitimate job expectations and were suspended, then terminated, they have failed to establish any facts that would give rise to an inference of discrimination. The plaintiffs allege that they were told by their supervisor Charlie Lamb to have the lock removed from the Quality Control Lab door and should not have been punished for removing the lock. Assuming *arguendo* that the plaintiffs had authority to remove the lock, there is no evidence that Welspun discriminated against them in response to the lock incident. First, although both Daniels and Springer were questioned, only Daniels was suspended because of the lock incident; Springer was suspended for working without authorization. Furthermore, Daniels was not suspended for attempting to remove the lock but for causing damage to the door in the process by instructing Holloway to forcibly remove the lock, which was inside the Quality Control Lab, from the outside. Finally, there is no evidence that any similarly situated male employees who were involved in the incident were treated differently. Janicki suspended Holloway

for causing damage to the door.  He found no reason to suspend Chary Pidicheti, who was working in the Quality Control Lab at the time, because Chary did not cause any damage to the door or instruct anyone else to damage the door.

The plaintiffs contend that, although Janicki suspended Holloway, the suspension was meaningless because Holloway was scheduled to be off of work on Tuesday, December 22, 2009, the date of his suspension.  The plaintiffs offer no evidence that Janicki knew when he suspended Holloway that Holloway was not scheduled to work that day.  Furthermore, Janicki testified at trial that, even if Holloway suffered no monetary loss for the suspension, the suspension still appeared on his employment record at Welspun as a disciplinary action.

Nor have the plaintiffs offered any evidence that the circumstances surrounding their termination give rise to an inference of sex discrimination.  The parties stipulated that at least four male employees at Welspun who were accused of stealing time also were terminated.  In June 2009, Welspun terminated Larry Paris for time card fraud and theft after he left work without notifying his supervisor that he was leaving or clocking out.  Similarly, in January 2010, Mike Adams was terminated for being dishonest with his supervisor when he indicated that he had left work at 8:00 a.m. one day, when in fact he did not leave the property until 3:18 p.m.  In May 2010, Saheed Lawal was terminated for stealing time when he left work early several days in a row without clocking out.  In June 2010, Archie Boykins was terminated for similar conduct.[1]

---

[1] The plaintiffs suggest that male employees Phillip Holloway and Mike Adams, who quit their jobs at Welspun and were later rehired, are similarly situated to the plaintiffs.  However, there is a significant different between being terminated for wrongful conduct and voluntarily leaving a company.  In that respect, the plaintiffs are not similarly situated to either Holloway or Adams.

Although it is not necessary to prove that similarly situated individuals were treated differently than the plaintiffs to establish a prima facie case of discrimination, the plaintiffs must point to some evidence from which the Court could infer sex discrimination. Springer and Daniels point out that, while the male employees mentioned above for stealing time tried to get paid for hours that they did not work, both Springer and Daniels *actually worked* on Sunday, December 20, 2009. Although it seems odd to say that an employee is "stealing time" when, in fact, the employee is working, "federal courts do not serve as 'super-personnel departments,' sitting in judgment of an employer's business decisions absent evidence of discrimination." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 522 (8th Cir. 2010). Here, the evidence fails to show that Welspun discriminated against Springer and Daniels because of their sex.

Even if the evidence were sufficient to establish a prima facie case of discrimination, it would not be enough to establish pretext. Welspun has provided legitimate, nondiscriminatory reasons for suspending and terminating the plaintiffs—both Springer and Daniels worked unscheduled overtime without authorization, and Daniels caused damage to the Quality Control Lab door. Per the employee handbook, damaging company property and working without authorization are separate grounds for discipline up to and including termination. Thus, the burden shifts back to Springer and Daniels to show that these stated reasons for their suspension and termination are mere pretext for gender discrimination. *Carraher*, 503 F.3d at 717.

To establish pretext, a plaintiff must "demonstrate that a discriminatory animus lies behind the [defendant's] neutral explanations. . . . [E]ven if an employer fires an employee based upon a mistaken belief, the employee still must offer some evidence that [discriminatory] animus was at the root of the termination." *Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843,

847 (8th Cir. 2006). Likewise, even if an employee is treated unfairly, such treatment does not necessarily give rise to a Title VII cause of action. *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 812 (8th Cir. 2005). Here, Springer and Daniels argue that they were treated unfairly because they were accused of stealing time when in fact they were working overtime without authorization. However, they offer no evidence to suggest that any discriminatory animus was behind the decision to terminate them.[2]

The plaintiffs point to one male employee, Rodney Tyson, who left his assigned area on June 18, 2010, after clocking into work and was not terminated. Tyson did not share the same supervisor as the plaintiffs, however; his supervisor was Martin Cain. To prove discrimination based on similarly-situated persons of another sex, "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 720 (8th Cir. 2008) (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)). That simply was not the case here.

## CONCLUSION

As stated above, neither Springer nor Daniels proved at trial that Welspun discriminated against them or subjected them to disparate treatment based on their sex. As a result, a judgment in favor of Welspun will be entered separately.

---

[2] The plaintiffs offered evidence at trial that, as of September 30, 2010, only 35 of Welspun's 446 employees are female. "[S]tatistical evidence will rarely suffice to rebut an employer's legitimate, nondiscriminatory reasons for a particular adverse employment action." *Bogren v. Minn.*, 236 F.3d 399, 406 (8th Cir. 2000). Where, as here, there is no independent evidence to support a finding of pretext, and the statistics are not probative of the reason for the plaintiffs' termination, statistical evidence is insufficient to establish pretext. *Id.*

IT IS SO ORDERED this 29th day of March, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE